# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

CHRISTOPHER WHITE,          )
                                   )
       Petitioner,           )
                                   )
          vs.               )     No. 4:08CV00288 AGF
                                   )
TROY STEELE,              )
                                   )
       Respondent.     )

## MEMORANDUM AND ORDER

This matter is before the Court on the amended petition of Missouri state prisoner Christopher White for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was convicted of acting with others in connection with charges of murder in the first-degree and assault in the first degree, and two counts of armed criminal action, all related to the June 21, 2002 murder of Freddie Chew and shooting at Jeffrey Shockley in the same incident. Petitioner was sentenced as a prior offender to life imprisonment without the possibility of parole, 15 years imprisonment, life imprisonment, and life imprisonment, respectively. In his amended petition, filed with the assistance of counsel, Petitioner asserts the following four grounds for federal habeas relief:

(1) the state violated his rights under *Brady v. Maryland*, 373 U.S. 83 (1963) (holding that the due process requires the state to disclose to the defense material impeachment evidence), by withholding evidence that key prosecution witnesses Shockley and Robert Stewart received favorable treatment, or promises thereof, on state charges in exchange for their testimony against Petitioner;

(2) the state failed to correct Shockley after he testified that he had not made any deals with the State in exchange for his testimony;

(3) defense counsel was ineffective for failing thoroughly to cross-examine Stewart and Shockley about whether they were drug dealers;

(4) Petitioner's right to a speedy trial was violated.

Respondent argues that Petitioner's first two claims are barred by the statute of limitations and because they were procedurally defaulted in state court; and alternatively, that these claims are without merit. Respondent argues that Petitioner's speedy trial claim was procedurally defaulted, and that in any event, the claim lacks merit. Lastly, Respondent maintains that state courts' adjudication of Petitioner's claim of ineffective assistance of defense counsel was factually and legally reasonable. For the reasons set forth below, habeas relief shall be denied.

## BACKGROUND

### Trial

A complaint was filed against Petitioner on June 29, 2002, charging the crimes of conviction. On January 3, 2003, Petitioner filed a request for disposition of indictments, informations, or complaints. Trial commenced on January 12, 2004. At the time, Shockley had state felony charges pending against him that had been filed on February 18, 2002, for possession of cocaine base (a class C felony), and carrying a concealed weapon (a class D felony).

There is no dispute about the sufficiency of the evidence against Petitioner. This evidence established the following. Early in the morning of June 21, 2002, Shockley

(who was about 17 years old at the time) and his friend Stewart were walking to Shockley's house after spending the night at a friend's house during which they smoked marijuana. Shockley and Stewart stopped at the house where Chew was staying (referred to herein as Chew's house), a few houses down the block from Shockley's house, to join Chew and his girlfriend Jacqueline Daughtery on the front porch. While chatting on the porch and preparing to smoke marijuana, the friends saw a car stop at Shockley's house and three men (all in their late teens or early 20s) with large guns in their hands exit the car. Daughtery began knocking on the front door of Chew's house, making a lot of noise, and the three men who had exited the car began walking toward Chew's house. Shockley and Stewart knew Petitioner and Juane Kennell and identified them as two of the men. A few years prior, Shockley and Kennell's younger brother had had a fist fight and since that time, Shockley and Kennell continued to engage in violent altercations, sometimes involving guns.

As the three men approached, Daughtery, Chew, Shockley, and Stewart jumped off the porch into the gangway on the side of the house. Chew and Shockley each had guns of their own. Daughtery ran to the back door of the house and went inside. Chew stepped out of the gangway and fired a shot at the three men after one of them asked where Shockley was. The three men fired at Chew who fell to the ground. Shockley also fired at the three men, with a Glock 9, and as shooting continued, Shockley and Stewart ran from the scene, with Kennell shooting at them in pursuit. Petitioner and the third man shot Chew at point-blank range as he tried to get up, killing him. The three men who had driven up in the car (including Petitioner and Kennell) left the scene on foot. Police

3

recovered 49 shell casings at the scene from at least five different semi-automatic handguns, including two casings from a Glock 9. No weapons were retrieved from the scene. Shockley testified that he threw his gun at the scene and never retrieved it.

The main prosecution witnesses at trial against Petitioner were Shockley and Stewart, who each testified to the above, with the exception of the shooting of Chew as he tried to get up. Another witness, who could not identify the shooters who drove up, testified about that aspect of the incident. Kennell's fingerprints were recovered from the car the three men had driven up in, but no physical evidence or other witnesses besides Shockley and Stewart placed Petitioner at the scene. The man who drove up with Petitioner and Kennell was never identified.

On cross-examination of Shockley, defense counsel elicited that he had a state felony charge pending against him (referring to the February 2002 charges). On redirect, Shockley testified that the prosecutor had not given him any deals or made him any promises in exchange for his testimony against Petitioner, that the case against him (Shockley) was still pending, and that he did not expect to get anything in exchange for his testimony against Petitioner. (Resp. Ex. A-II, Trial Tr. at 555-56.)

The defense also presented evidence that on July 1, 2002, ten days after Chew's murder, a car driven by Shockley in which Stewart was a back seat passenger and another individual was a front seat passenger was stopped by the police for a traffic violation. A Glock 9 was retrieved from under the front passenger seat and the individual who had been in that seat was charged with possession of a concealed weapon. The weapon turned out to be one of the firearms that was involved in the June 21, 2002 shooting.

4

The trial court ruled that defense counsel could not ask Shockley whether he was returning to his house the morning of the shooting to get drugs to sell (uncharged bad action), but could ask Shockley whether the shooting incident stemmed from a drug deal; defense counsel did not then pursue that line of questioning. The focus of the defense was alibi and intentionally false identification by Stewart and especially Shockley for purposes of revenge. But Petitioner requested that the jury also be instructed on self-defense, and the trial court did so. Kennell had been tried separately and convicted by a jury on the same charges.

**Shockley's February 9, 2004 Guilty Plea**

On February 9, 2004, Shockley entered a guilty plea in state court to the two felony offenses that were charged on February 18, 2002. *State v. Shockley*, Cause No. 021-00715 (21st Judicial Circuit on the City of St. Louis). Shockley's appointed counsel, Robert Taaffe, stated at the start of the plea colloquy that no plea agreement existed. The prosecutor recommended a two year suspended sentence, two years of supervised probation, 80 hours of community service, and 60 days of "shock incarceration." The court ascertained that Shockley had no prior convictions or any other pending charges. After the Court accepted Shockley's plea, his counsel argued for a more lenient sentence, as follows:

> Mr. Shockley's nineteen years old. He used to live in the City of St. Louis. Now he lives in St. Louis County with his mother. For the past two years, Mr. Shockley has cooperated with the State of Missouri in the prosecution of two murder first cases. . . . As a result of this testimony, Judge the state secured two first degree murder convictions, and Mr. Shockley did this not just as a concerned citizen, which would be his normal duty, but did this when his life was threatened. And he cooperated with the state. They

> moved him. He's out of the neighborhood, Judge, he's out of that element, and he did what he ought to have or should have done as a citizen. . . . Your Honor, he did all of this without an agreement from the State of Missouri. There was no plea agreement for Mr. Shockley to cooperate with the State of Missouri. No agreement. No quid pro quo, your Honor. He did this because he thought it was the right thing to do.

(Doc. No. 17-2 at 9-10.) Shockley's counsel asked for a suspended imposition of sentence and six months of unsupervised probation. The Court sentenced Shockley to a suspended imposition of sentence on both counts and one year of unsupervised probation.

**Petitioner's Direct Appeal**

On direct appeal, Petitioner raised the following three grounds for reversal of his convictions: (1) the trial court lacked jurisdiction under Missouri's Uniform Mandatory Disposition of Detainers Law because the State did not bring him to trial within the statutorily-designated 180 days of his request for disposition of the charges, and the delay in his trial denied his rights under the Sixth and Fourteenth Amendments; (2) the trial court erred in overruling Petitioner's objections to parts of two self-defense instructions that were given to the jury; and (3) the trial court erred in sustaining the State's objection to Petitioner's cross-examination of Shockley about whether he was returning to his house to obtain drugs to sell. (Resp. Ex. D.)

On May 31, 2005, the Missouri Court of Appeals affirmed Petitioner's convictions. The court rejected the first claim on state statutory grounds without addressing Petitioner's federal constitutional right to a speedy trial. The state appellate court held that the challenged self-defense instructions were appropriate in light of the evidence at trial. And the court rejected the evidentiary claim, on the ground that the

proposed cross-examination would have been inadmissible under state evidentiary rules because it was collateral to the shooting incident and irrelevant for impeachment purposes.  (Resp. Ex. F.)

**State Postconviction Proceedings**

On November 4, 2005, Petitioner filed a motion for state post-conviction relief.  In his amended motion, his only claim was that trial counsel provided ineffective assistance in failing to cross examine Shockley about drugs, within the parameters allowed by the court.  On November 6, 2006, the trial court denied the motion for postconviction relief, concluding that defense counsel's decision not to pursue the drug deal issue was reasonable trial strategy, and in any event was not prejudicial because whether the shooting erupted over a drug deal or for revenge was marginal, with the primary issue being whether Petitioner was present.  The court also noted that evidence at trial included references to Shockley's and Stewart's use of drugs.  On May 22, 2007, the Missouri Court of Appeals affirmed the denial of post-conviction relief, essentially applying the same reasoning as the motion court.

**Federal Habeas Action**

Petitioner filed a pro se habeas petition on February 29, 2008, raising four grounds for relief previously raised in the state courts – the alleged speedy trial violation, instructional error, improper limitation of the cross examination of Shockley, and ineffective assistance of trial counsel.   On May 11, 2009, retained counsel entered an appearance on Petitioner's behalf and moved for leave to file an amended petition within 90 days.  This unopposed motion was granted by the Court.  The time to file an amended

petition was later extended to September 18, 2009, and on September 17, 2009,

Petitioner, with the assistance of counsel, filed the amended petition raising the *Brady*

claim and related prosecutorial misconduct claim, noted above, for the first time.  He also

raised the ineffective assistance of counsel claim and the speedy trial claim noted above.

> In support of the new claims, Petitioner argues as follows:

> There is little doubt that an undisclosed deal existed between the state and Shockley.  The existence of a secret deal is the only way to explain how a defendant facing two serious felony charges, which had been pending for two years, received an extremely lenient sentence less than a month after testifying at the trial of [Petitioner].

(Doc. No. 17 at 9.)

Further, Petitioner submits evidence that at the time of the July 1, 2002

traffic stop mentioned above, Shockley and Stewart were each charged with

possession of small amounts of illegal drugs.  (Doc. No. 17-3.)  Petitioner states

that there is no public record on the disposition of these charges and that that

would be consistent with these charges being dismissed or disposed of by way of a

suspended imposition of sentence.  From this Petitioner posits that a deal for a

favorable disposition of these charges in exchange for Shockley's and Stewart's

testimony against Petitioner (and Kennell) may well have existed too.

With respect to the speedy trial claim, Petitioner asserts that of the 375 day

delay in bringing Petitioner to trial after his request for disposition, 249 days were

attributable to the state and the court.  Petitioner asserts that he was prejudiced by

the delay in his trial in that he was subjected to "prolonged pretrial incarceration"

and  his "defense was impaired at trial as his alibi witnesses had to testify to events

that occurred over a year and a half prior to their testimony. Obviously, their memories were not as good at the time of trial as they would have been if Petitioner has been given a speedier trial." (Doc. No. 17 at 20.)

In response to the amended petition, Respondent argues that the *Brady* claim and related prosecutorial misconduct claim are time barred because they were filed beyond the applicable one-year statute of limitations, and do not relate back to the original pro se petition. Respondent further argues that because these claims were never presented to the state courts, they were procedurally defaulted, and Petitioner cannot establish cause and prejudice, or actual innocence, to excuse the default. Respondent argues that in any event, the claims fail because the existence of a deal with either Shockley or Stewart is mere speculation, especially in light of the assertion to the contrary by Shockley's plea counsel.

Respondent argues that the speedy trial claim fails because, to the extent it is based on Missouri law, it is not cognizable in this action; and to the extent it is based on the federal Constitution, it was not presented to the state courts and was thus procedurally defaulted. Respondent argues that in any event, the claim lacks merit because Petitioner "does not point to any prejudice that he suffered and admits that he did not raise a speedy trial claim in the trial court." (Doc. No. 19 at 12-13.) Lastly, the claim of ineffective assistance of defense counsel fails, according to Respondent, because it was reasonably adjudicated by the state courts, thereby precluding federal habeas relief.

By traverse, Petitioner asserts that the factual predicate for his *Brady* and prosecutorial misconduct claims was not discovered by the exercise of due diligence until January 2009, when, according to Petitioner's affidavit, a fellow prisoner gave Petitioner several documents. Included among these documents was an internal Public Defender form dated February 7, 2003, regarding Kennell that indicated that Shockley had received a deal to testify against Kennell and Petitioner.[1] Petitioner attests that after receiving these documents, he forwarded them to Kennell who gave them to his attorney, Kent Gipson. Petitioner states that "[a]s the result of these documents, Mr. Gipson, after investigation, was able to uncover additional evidence of a secret deal between the state and Shockley, as demonstrated by the guilty plea transcript . . . . Mr. Gibson received the transcript in July 2009." According to Petitioner, the guilty plea transcript demonstrates that the government gave Shockley financial assistance to relocate him prior to his testimony, a fact that was not disclosed by the State.

Petitioner asserts that the State's failure to turn over during discovery information about the purported deals with Shockley and Stewart, in addition to the prosecutor eliciting testimony from Shockley at trial that there was no deal,

---

[1]   This form, a Conflict Transfer Request Form, states as follows:

> Bob Taaffe represents Jeff Shockley in 021-0715. SR has just learned that Bob negotiated a deal for Jeff Shockley to testify against [Kennell], who was just arraigned on 1/13/03, as well as possibly another defendant, Christopher White (who may also be coming down the pike, as I think we just interviewed that guy today).

(Doc. No. 31-2 at 4.)

establishes cause for his failure to raise his *Brady*-related claims to the state courts. He asserts that the prejudice requirement to overcome the procedural bar is identical to the *Brady* materiality test of showing "a reasonable probability of a different result" and that this test is met here.

The Court granted Petitioner's request to engage in discovery to ascertain whether Stewart and/or Shockley had negotiated favorable treatment in exchange for their testimony against Petitioner, to the extent that the Court ordered the Circuit Attorney's Office for the City of St. Louis, the St. Louis Metropolitan Police Department, and the Missouri Public Defender System to provide numerous files, including any files involving charges filed against Shockley and Stewart. In light of the subpoenaed parties' objections, including the Public Defender System's objection based on the confidentiality of its clients' files, the Court ordered that the files be submitted to the Court for its *in camera* inspection.

## DISCUSSION

### *Brady* **and Prosecutorial Misconduct Claims**

Statute of Limitations and Procedural Default

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") establishes a one-year statute of limitations period for state prisoners to file a petition for federal habeas corpus relief. 28 U.S.C. § 2244(d)(1). The triggering event for the limitations period is the latter of four different events, the relevant one here being "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." § 2244(d)(1)(D).

The Court agrees with Petitioner that his *Brady* claim and related prosecutorial misconduct claim are not time barred because they were brought within one year of January 2009, which the Court determines is "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." *See Jefferson v. United States*, 730 F.3d 537, 548 (6th Cir. 2013).

As noted above, Respondent also relies on the doctrine of procedural default to defeat Petitioner's *Brady* and prosecutorial misconduct claims. Under that doctrine, a federal habeas court is barred from considering the merits of a claim not fairly presented to the state courts, absent a showing by Petitioner of cause for the default and prejudice resulting therefrom. *See, e.g. Wemark v. Iowa*, 322 F.3d 1018, 1020-21 (8th Cir. 2003). Here, cause is shown by the State's alleged failure to disclose *Brady* material. *See Banks v. Dretke*, 540 U.S. 668, 693-98 (2004). Whether prejudice has been shown entails the same inquiry as does an evaluation of the merits of the claim. *See id.* at 699. The Court accordingly turns to that inquiry.

Merits

In *Brady*, the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985).

12

Thus, there are three components of a *Brady* violation: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory or impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). In determining whether the suppression of impeachment evidence is sufficiently prejudicial to rise to the level of a *Brady* violation, a court must analyze the totality of the undisclosed evidence "in the context of the entire record." *United States v. Agurs*, 427 U.S. 97, 112 (1976). "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995); *see also Banks*, 540 U.S. at 698 ("[T]he materiality standard for Brady claims is met when favorable evidence could reasonably be taken to put the whole case in such different light as to undermine confidence in the verdict.") (citation omitted); *Clay v. Bowersox*, 367 F.3d 993, 1000 (8th Cir. 2004) ("The materiality standard under *Brady* . . . is . . . whether there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." ) (citation omitted). In the absence of materiality, courts consider any failure to disclose information to a defendant to be harmless error. *Dye v. Stender*, 208 F.3d 662, 665 (8th Cir. 2000).

Both express agreements between the prosecution and cooperating witnesses, as well as "less formal, unwritten or tacit agreement[s]" are "subject to *Brady*'s disclosure mandate." *Bell v. Bell*, 512 F.3d 223, 233 (6th Cir. 2008) (en banc) (citing *Giglio v.*

*United States*, 405 U.S. 150, 154-55 (1972)).  Here, the record, including the *in camera*

files, do not contain any evidence of an agreement with Stewart or Shockley related to

their July 1, 2002 arrest, in exchange for their testimony against Petitioner.  The police

report shows that Shockley had been arrested for possession of a baggie of marijuana in

his pant pocket, and Kennell was arrested for a baggie of marijuana and a small baggie

containing one rock of crack cocaine found under the front seat of the vehicle, but within

Kennell's access.  Shockley was 17 years old at the time, and had no prior criminal

convictions.  (Doc. No. 17-3.)  The *in camera* files show that within days of the arrest

(and no later than July 5, 2002), those charges were refused for lack of "sufficient value"

with respect to Shockley and for "insufficient connection" with respect to Stewart.  The

basis for that refusal is supported by the arrest report.  Petitioner presents no evidence

suggesting a refusal of charges for the possession of a small amount of marijuana by a 17

year old, with no prior criminal convictions, was unusual.  Petitioner's speculation that

there may have been an agreement related to these arrests has no basis, and is refuted by

the record.

      The *in camera* files, however, reveal a different picture with respect to Shockley

and the February 18, 2002 charges against him.  Taaffe's file notes are consistent with the

representations at Shockley's February 9, 2004 guilty plea that there was no deal between

Shockley and the State.  But Taaffe's notes dated November 13, 2003, stated that

Shockley agreed to testify against Petitioner and Kennell in the Chew murder case, and

"The State hinted that there may be a nolle after this is over."

These case notes and Taaffe's own representations to the plea court that no deal had been made with Shockley in exchange for his testimony against Petitioner and Kennell outweigh the probative value of the Public Defender Conflict Transfer Request Form quoted above that a deal had been made. But even though a deal or promises were not made, if indeed the State hinted that it may drop the February 18, 2002 charges against Shockley in exchange for his testimony, an argument can be made that such a hint may have been subject to *Brady*'s disclosure requirement.

The Court need not decide that issue, because the Court concludes that any *Brady* violation with respect to such a hint would have been harmless, in that despite its nondisclosure, the verdict is "worthy of confidence" and that there is no "reasonable probability of a different result." First, the impeachment value of a "hint" is rather weak. *See Clay*, 367 F.3d at 1000 (rejecting *Brady* claim where the impeachment value of the information in question was "relatively insignificant.") There is no evidence of any promise or agreement with regard to the testimony.

Second, Stewart's testimony, not just Shockley's, identified Petitioner as one of the shooters, and in light of Stewart's testimony the Court's confidence in the verdict is not undermined. *See Dye*, 208 F.3d at 667 (concluding that even if certain witnesses for the prosecution had entered into deals with the state in exchange for their testimony, the state's failure to disclose this was immaterial under *Brady* in light of the other evidence at trial); *Sullivan v. Lockhart*, 958 F.2d 823, 825-26 (8th Cir. 1992) (holding that evidence of an alleged deal the state made with a witness to drop charges in exchange for her

testimony was not material under *Brady* where other witnesses testified to the same effect as the witness in question).

And third, there was other evidence of Shockley's lack of credibility – the jury heard about his drug use, possession of a gun, and his motive to incriminate Petitioner. *See Dye*, 208 F.3d at 667 (considering other evidence of witnesses' lack of credibility in ruling on a *Brady* claim involving undisclosed impeachment evidence). The Court reaches the same conclusion with respect to any understanding between Shockley and the prosecution that paying for his move from the City to the County was in exchange for his testimony in Petitioner's trial. In sum, the Court concludes, in light of the record as a whole, that Petitioner's *Brady* claim fails.

Petitioner's claim of prosecutorial misconduct in failing to correct Shockley when he allegedly testified falsely with respect to deals or promises in exchange for his testimony fails because there is no support in the record that this was indeed false. To the contrary, the *in camera* files and Taaffe's representations at Shockley's February 9, 2004 guilty plea establish that there were no deals or promises, just, at most, a "hint" of *possible* favorable treatment. And indeed, the charges against Shockley were not dismissed. To the extent that the prosecutor should have corrected Shockley's testimony to make sure it mentioned a hint by the State for favorable treatment of pending charges – assuming the prosecutor even believed that such a "hint" had been made – this omission did not create a reasonable likelihood that Shockley's failure to mention the hint, "could have affected the jury's verdict." *See, e.g., United States v. Funchess*, 422 F.3d 698, 701 (8th Cir. 2005) (explaining that to establish a due process violation based on the

prosecutorial use of false testimony, a defendant must show that "there was a reasonable likelihood that the perjured testimony could have affected the jury's verdict").

**Ineffective Assistance of Defense Counsel Claim**

Standard of Review

Where a claim has been adjudicated on the merits in state court, AEDPA provides that application for a writ of habeas corpus cannot be granted unless the state court's adjudication

1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

The "contrary to" clause is satisfied if a state court has arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or confronts facts that are materially indistinguishable from a relevant Supreme Court precedent but arrives at the opposite result. *Strong v. Roper*, 737 F.3d 506, 510 (8th Cir. 2013); *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003). A state court "unreasonably applies" clearly established federal law when it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000).

Merits

To prevail on a claim on ineffective assistance of counsel, a habeas petitioner must show that counsel's performance was deficient, and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "The first prong requires a showing 'that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment.' The second prong requires a showing that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *White v. Dingle*, 757 F.3d 750, 752-53 (8th Cir. 2014) (quoting *Strickland*, 466 U.S. at 687, 694). There is a "'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Tunstall v. Hopkins*, 306 F.3d 601, 606 (8th Cir. 2002) (quoting *Strickland*, 466 U.S. at 689).

Here the Court concludes that the state courts reasonably held that defense counsel's failure to cross-examine Shockley about whether the shooting incident on June 21, 2002, resulted from a drug deal gone bad did not constitute ineffective assistance of counsel. The state courts applied the correct legal principles to the claim, and reasonably found, based on the evidence at trial, that the failure of defense counsel to pursue the issue of whether the shooting incident erupted over a drug deal or for revenge was marginal, with the primary issue being whether Petitioner was present. The Court also notes that there was no evidence to support such a line of questioning.

## Speedy Trial Claim

Procedural Default

Respondent's argument that Petitioner's federal constitutional speedy trial claim was procedurally defaulted is without merit. As noted above, Petitioner not only relied upon the state speedy trial statute, but also argued that his rights under the Sixth and Fourteenth Amendments were violated by the delay in his trial. *See Wemark*, 322 F.3d at 1021 (explaining that a claim has been fairly presented to the state courts when a petitioner has properly raised the same factual grounds and legal theories in the state courts that he is attempting to raise in his federal petition).

Merits

"The Sixth Amendment guarantees a criminal defendant the right to a speedy trial." *United States v. Brown*, 325 F.3d 1032, 1034 (8th Cir. 2003) (citation omitted). In order to determine whether the right to a speedy trial has been violated, courts balance four factors: (1) length of delay; (2) reason for the delay; (3) defendant's assertion of the right; and (4) prejudice. *Barker v. Wingo*, 407 U.S. 514, 530 (1972); *see also Vermont v. Brillon*, 556 U.S. 81, 88-89 (2009) (affirming the *Barker* test and holding that delays caused by state public defenders appointed to represent a defendant were not attributable to the state)*; United States v. Rodriguez-Valencia*, 753 F.3d 801, 805-06 (8th Cir. 2014).

The Supreme Court explained in *Barker* that none of the four factors is "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. . . . [C]ourts must still engage in a difficult and sensitive balancing process." *Barker*, 407 U.S. at 533. The Supreme Court has identified three ways that post-charge

delay may prejudice a defendant: oppressive pretrial incarceration, anxiety and concern about the accused's fate, and impairment of the accused's defense. *Doggett v. United States*, 505 U.S. 647, 654 (1992) (citation omitted).

Here, Respondent does not challenge Petitioner's assertion that of the 375 day delay in bringing Petitioner to trial after his request for disposition, 249 days were attributable to the state and the court. Respondent's argument that the claim lacks merit because Petitioner did not assert prejudice is contradicted by the amended habeas petition, wherein, as noted above, Petitioner asserts that he was prejudiced by the delay due to being subjected to prolonged pretrial incarceration and his defense being impaired as his alibi witnesses' memories were not as good as they would have been if Petitioner had been given a speedier trial.

The Court concludes, however, the Petitioner's speedy trial claim fails. A delay of 375 days is a lengthy delay in this context. *See United States v. Jeanetta*, 533 F.3d 651, 656 (8th Cir. 2008) ("A delay approaching one year may meet the threshold for presumptively prejudicial delay requiring application of the *Barker* factors."). Both sides bear some responsibility for the delay, with approximately 1/3 being due to Petitioner and 2/3 to the state. There is no allegation or indication that the prosecution intentionally caused any delay, a factor mandating against finding a constitutional violation. *See, e.g., United States v. Summage*, 575 F.3d 864, 876 (8th Cir. 2009). After filing the request for disposition on January 3, 2003, the record does not show, nor does Petitioner claim, any further assertion of a right to be tried without further delay. And lastly, Petitioner's vague assertion that the memories of his alibi witnesses were not as good as they were

closer to the shooting does not suffice to show prejudice. *See id.* (holding that the defendant's listing the names of people "who he vaguely claimed would have been able to offer some . . . corroborative evidence to substantiate the defense theory" was insufficient to meet his burden to establish prejudice from the two-year delay in his trial). Upon weighing all the factors, the Court concludes that Petitioner's constitutional rights were not violated due to the delay in his trial.

## CONCLUSION

The Court concludes that Petitioner is not entitled to federal habeas relief. Furthermore, the Court does not believe that reasonable jurists might find the Court's assessment of the procedural or substantive issues presented in this case debatable or wrong, for purposes of issuing a Certificate of Appealability under 28 U.S.C. §2254(d)(2). *See Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003) (standard for issuing a Certificate of Appealability) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Accordingly,

**IT IS HEREBY ORDERED** that the petition of Christopher White for a writ of habeas corpus is **DENIED**.

**IT IS FURTHER ORDERED** that a Certificate of Appealability shall not issue in this case.

A separate Judgment shall accompany this Memorandum and Order.

*Audrey G. Fleissig*
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 16th day of September, 2014.